**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **TRUSTEES OF MARION KINGDOM HALL OF JEHOVAH'S WITNESSES, et al.,** )<br>)<br>) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **CIVIL NO. 07-530-GPM** |
| ) | |
| **CITY OF MARION, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter is before the Court on the motion to dismiss brought by Defendant City of Marion ("Marion") (Doc. 8) and the motion to dismiss brought by Defendant Karco Recycling, LLC ("Karco") (Doc. 14). For the following reasons, the motions are **GRANTED**, and the claims for violations of constitutional due process asserted in Count I and Count II of the complaint in this cause are **DISMISSED without prejudice** for lack of subject matter jurisdiction. The Court **DECLINES** to exercise supplemental jurisdiction over the pendent state-law claims asserted in Counts III-VII of the complaint, and those claims are **DISMISSED without prejudice**.

## I. BACKGROUND

This action involves a challenge to certain zoning decisions taken by Marion with respect to the operation of an automobile-shredding complex by Karco. Plaintiffs Trustees of Marion Kingdom Hall of Jehovah's Witnesses, Jerry and Greta Cooksey, Carol and Ronald Reed, Don and Barbara Gunnell, Brenda and Opal Waide, Toni Wild, Cindy Simmons, Dennis and Kim Spencer,

Joe and Linda Kinley, Larry and Dona Howell, Bill and Lucille Whitehead, Ezera L. Miller, Joseph Miller, Dale Follis, Theresa Hill, David and Bernadine Jennings, Margaret Dolce, Lyle R. Copher, and Tery and Kara Bisching allege that they own property adjacent to a parcel of real property commonly referred to as 9450 State Route 148 South, Marion, Williamson County, Illinois, which was purchased by Karco on May 18, 2006. Plaintiffs allege that on June 12, 2006, Marion's city council approved Ordinance 2087 annexing a portion of the Crab Orchard & Egyptian Railroad's railway line, thereby making Karco's property contiguous with that of Marion. Plaintiffs allege further that on July 17, 2006, Marion's city council approved Ordinance 2094, which amended Ordinance 1148, adopted on June 1, 1987, governing the rezoning of rural and agricultural property to industrial property. The amendment approved as a permitted use of industrial property under Section 1 of Article X of Ordinance 1148 a "[f]ull service recycling facility with automobile shredder," and deleted a portion of Section 4 of Article X of Ordinance 1148 requiring that "[a]ll production, processing, cleaning, servicing, testing, repair, or storage activities shall be conducted entirely within enclosed buildings." Complaint ¶¶ 18-19. Plaintiffs allege that on July 24, 2006, on Karco's application, Marion's city council passed Ordinance 2095, which annexed Karco's property into that of Marion, and Ordinance 2096, which rezoned Karco's property from rural and agricultural to industrial.

Plaintiffs' complaint asserts seven counts. Count I and Count II, which are brought pursuant to 42 U.S.C. § 1983, allege that the annexation of Karco's property into that of Marion and the rezoning of the property for industrial use violate, respectively, Plaintiffs' constitutional substantive due process and procedural due process rights. Count III asserts a claim for quo warranto. Count IV requests a judicial declaration of the invalidity of Ordinance 2095 under Illinois law. Count V

requests an injunction against the enforcement of Ordinance 2095. Count VI requests a judicial declaration of the invalidity of Ordinance 2096 under Illinois law. Count VII requests an injunction against the enforcement of Ordinance 2096. Federal subject matter jurisdiction is asserted on the basis of 28 U.S.C. § 1331 with respect to Count I and Count II of the complaint; jurisdiction is asserted with respect to Counts III-VII on the basis of 28 U.S.C. § 1367. Both Marion and Karco have moved to dismiss the constitutional claims asserted in Count I and Count II of the complaint as unripe. Additionally, Karco argues that it is not a state actor and hence not a proper party Defendant with respect to the constitutional claims, and further asks the Court to abstain in this case under the doctrines enunciated in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Having reviewed carefully the submissions of the parties and conducted a hearing on the motions to dismiss, the Court now rules as follows.

## II. DISCUSSION

### A. Dismissal for Lack of Subject Matter Jurisdiction

#### 1. Legal Standard

In evaluating a request for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure, "the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citing *Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir. 1993)). *See also United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). In order to determine if subject matter jurisdiction exists, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue[.]" *Ezekiel*, 66 F.3d at 897. *See also*

*Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993); *Freiburger v. Emery Air Charter, Inc.*, 795 F. Supp. 253, 256-57 (N.D. Ill. 1992). If the factual basis for subject matter jurisdiction is contested, the plaintiff has the burden of bringing forward "competent proof" of the existence of subject matter jurisdiction. *Johnson v. Equitable Life Assurance Soc'y of U.S.*, No. 96 C 2418, 1997 WL 417409, at *2 (N.D. Ill. July 22, 1997). In other words, a plaintiff must prove to the court by "a preponderance of the evidence . . . that jurisdiction exists." *Villasenor v. Industrial Wire & Cable, Inc.*, 929 F. Supp. 310, 312-13 (N.D. Ill. 1996) (quoting *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995)). *See also Johns v. Johns Mitchell*, No. 06-924-GPM, 2007 WL 496391, at *1 (S.D. Ill. Feb. 13, 2007).

### 2.     Ripeness

In general, Article III of the Constitution restricts the jurisdiction of federal courts to "cases or controversies," and prohibits such courts from issuing advisory opinions. *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992) (citing *Wisconsin's Envtl. Decade, Inc. v. State Bar of Wis.*, 747 F.2d 407, 410 (7th Cir. 1984)). Implicit in these requirements is the doctrine of ripeness, which provides generally that federal courts may not adjudicate cases where "the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Id. See also Lehn v. Holmes*, 364 F.3d 862, 867 (7th Cir. 2004) (explaining that the ripeness doctrine stems from "the . . . central perception . . . that courts should not render decisions absent a genuine need to resolve a real dispute."). The ripeness doctrine has both a constitutional component based on Article III and a prudential component based on the discretionary power of a court to refuse review for policy concerns. *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993); *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1002 (7th Cir. 2004). "[C]oncern with the

contingency of future events is at the core of the ripeness doctrine." *Alcan Aluminum Ltd. v. Oregon Dep't of Revenue*, 724 F.2d 1294, 1295 n.1 (7th Cir. 1984). *See also* 13A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice & Procedure* § 3532 (3d ed. 1998 & Supp. 2007) ("The central concern [of the ripeness doctrine] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.") (collecting cases). In determining whether a case is ripe, a court will consider two factors: (1) whether the issue is fit for judicial decision; and, if not, (2) whether there will be any hardship to the parties if the court withholds consideration. *See Texas v. United States*, 523 U.S. 296, 300-01 (1998); *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983); *Commodity Trend Serv., Inc. v. CFTC*, 233 F.3d 981, 985 (7th Cir. 2000). A plaintiff has the burden of proving a case is ripe for adjudication. *See Ostergren v. Village of Oak Lawn*, 125 F. Supp. 2d 312, 323 (N.D. Ill. 2000).

As a general rule, of course, there is no requirement that a plaintiff asserting a deprivation of constitutional rights by persons acting under color of state law must exhaust administrative remedies before bringing an action under 42 U.S.C. § 1983. *See Patsy v. Florida Bd. of Regents*, 457 U.S. 496, 516 (1982); *Wudtke v. Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997). However, in the context of constitutional challenges to local land use regulation, the ripeness doctrine imposes on litigants a duty to pursue state remedies before seeking recourse to federal court. In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the Court held that before initiating a constitutional challenge to local land use regulation in federal court, a plaintiff must demonstrate that he or she has both received a "final decision regarding the application of the [challenged] regulations to the property at issue" from "the government entity

charged with implementing the regulations," and has sought "compensation through the procedures the State has provided for doing so." *Id.* at 186, 194. *See also Forseth v. Village of Sussex*, 199 F.3d 363, 372 (7th Cir. 2000) (quoting *Williamson County*, 473 U.S. at 186-87, 194) ("[B]efore a federal court may adjudicate land-use disputes, . . . the plaintiff must demonstrate that he or she received a 'final decision' from the relevant government entity . . . and . . . the plaintiff must have sought 'compensation through the procedures the State has provided for doing so.'"); *Gamble v. Eau Claire County*, 5 F.3d 285, 286 (7th Cir. 1993) ("[T]he landowner cannot complain that his constitutional right has been denied until he exhausts his remedies for obtaining a compensation award or equivalent relief from the state."). As the *Williamson County* Court explained, "no constitutional violation occurs until just compensation has been denied," which therefore obligates the "property owner [to] utilize procedures for obtaining compensation before bringing a § 1983 action." 473 U.S. at 194 n.13.

The special restrictions on ripeness created by *Williamson County* in the context of constitutional challenges to local land use regulation are prudential, rather than based on Article III. *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733 n.7 (1997). Importantly, those restrictions apply regardless of whether a landowner asserts an allegedly unconstitutional deprivation of property for a public or private use, *see Forseth*, 199 F.3d at 369 n.8; *Covington Court, Ltd. v. Village of Oak Brook*, 77 F.3d 177, 179 (7th Cir. 1996), and regardless of whether the relief sought is legal or equitable. *See Peters v. Village of Clifton*, 498 F.3d 727, 730, 732-33 (7th Cir. 2007); *Patel v. City of Chicago*, 383 F.3d 569, 574 (7th Cir. 2004); *Wisconsin Cent. Ltd. v. Wisconsin Pub. Serv. Comm'n*, 95 F.3d 1359, 1369 (7th Cir. 1996). *Accord Von Kerssenbrock-Praschma v. Sauders*, 121 F.3d 373, 379 (8th Cir. 1997); *Bickerstaff Clay Prods. Co.*

*v. Harris County, Ga.*, 89 F.3d 1481, 1490 (11th Cir. 1996); *MHC Fin. Ltd. P'ship v. City of San Rafael*, No. C 00-3785 VRW, 2006 WL 3507937, at *7 (N.D. Cal. Dec. 5, 2006). Finally, the *Williamson County* restrictions apply regardless of whether a constitutional challenge to local land use regulation is asserted under the rubric of substantive due process or procedural due process. As the United States Court of Appeals for the Seventh Circuit has instructed, "a property owner may not avoid *Williamson* by applying the label 'substantive due process' to the claim . . . . So too with the label 'procedural due process.' Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court." *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 167 (7th Cir. 1994). *See also Hager v. City of W. Peoria*, 84 F.3d 865, 869 (7th Cir. 1996) (stating that "[t]he exhaustion requirement of *Williamson County* applies whether plaintiffs claim an uncompensated taking, inverse condemnation, or due process violation.").[1]

      The Court turns to the matter of the state-law remedies available to Plaintiffs for challenging the annexation and zoning decisions at issue in this case. Considering first the matter of annexations, under Illinois law an annexation of property by a municipality is initiated by the filing

---

1. It perhaps is worth noting that the Seventh Circuit Court of Appeals traditionally has expressed a good deal of skepticism about the viability of substantive due process claims in the context of constitutional challenges to land use regulations. In general, unless a fundamental right is violated, substantive due process requires only that a governmental practice be rationally related to a legitimate government interest, meaning, "that the practice be neither arbitrary nor irrational." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). Where, as in this case, the substantive due process challenge involves only a property interest, "in addition to alleging that the decision was arbitrary and irrational, . . . the plaintiff must also show either a separate constitutional violation or the inadequacy of state law remedies." *Doherty v. City of Chicago*, 75 F.3d 318, 325 (7th Cir. 1996) (quoting *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1481 (7th Cir. 1990)). In this case, as will be discussed in more detail presently, Plaintiffs cannot show the inadequacy of state-law remedies, nor does their complaint assert a constitutional violation independent of the allegedly unconstitutional violation of their property interests.

of a petition for annexation by a landowner. *See* 65 ILCS 5/7-1-2; *In re Petition to Annex Certain Territory to Vill. of North Barrington*, 579 N.E.2d 880, 884 (Ill. 1991); *In re Petition for Annexation of Certain Prop. to Vill. of Plainfield, Ill.*, 642 N.E.2d 502, 504 (Ill. App. Ct. 1994); *In re Petition to Annex Certain Prop. to City of Wood Dale*, 611 N.E.2d 606, 612 (Ill. App. Ct. 1993).

Concerning objections to annexation, the Illinois Municipal Code provides, in pertinent part:

> After the filing of the petition but not less than 5 days prior to the date fixed for the hearing, any interested person may file with the circuit clerk his objections (1) that the territory described in the petition or ordinance, as the case may be, is not contiguous to the annexing municipality, (2) that the petition is not signed by the requisite number of electors or property owners of record, (3) that the description of the territory contained in the petition or ordinance, as the case may be, is inadequate, or (4) that the objector's land is located on the perimeter of such territory, that he does not desire annexation, and that exclusion of his land will not destroy the contiguity of such described property with the annexing municipality.

65 ILCS 5/7-1-3. *See also City of E. St. Louis v. Touchette*, 150 N.E.2d 178, 181-82 (Ill. 1958); *City of Wood Dale*, 611 N.E.2d at 616.

With respect to the procedure for resolving objections to annexation, the Illinois Municipal Code further provides,

> The cause shall be heard without further pleadings. At the hearing the objector may be heard in person or by counsel.
> Prior to hearing evidence on the validity of the annexation petition or ordinance, the court shall hear and determine any objection under sub-paragraph (4) of Section 7-1-3. If the court is satisfied that such objection is valid, it shall order the petition or ordinance to be amended to eliminate such objector's land from the territory sought to be annexed. Thereafter upon this hearing the only matter for determination shall be the validity of the annexation petition or ordinance, as the case may be, and the decision of the court shall be final. All petitions shall be supported by an affidavit of one or more of the petitioners, or some one on their behalf, that the signatures on the petition represent a majority of the property owners of record of land in the territory described and a majority of the electors of the territory therein described. Petitions so verified shall be accepted as prima facie evidence of such facts. If the court finds that (1) the annexation petition is not signed by the requisite number of electors or property owners of record; or (2) that the described property is not contiguous to the annexing municipality; or (3) that the description is

materially defective; or (4) that the petition or ordinance, as the case may be, is otherwise invalid, the court shall dismiss the petition or ordinance, as the case may be.

But if the court finds that the petition or ordinance, as the case may be, is valid, the court shall (1) enter an order describing the territory to be annexed, (2) find that the petition or ordinance, as the case may be, conforms to this Article, and (3) direct that the question of annexation be submitted to the corporate authorities of the annexing municipality or to the electors of the unincorporated territory, as the case may be, for final action. A certified copy of the order of the court directing that the question of annexation be submitted to the corporate authorities shall be sent to the clerk of the annexing municipality.

Appeals shall lie from any final order of the court as in other civil actions.

65 ILCS 5/7-1-4. *See also City of Countryside v. Village of La Grange*, 180 N.E.2d 488, 490

(Ill. 1962); *Touchette*, 150 N.E.2d at 181-82; *City of Wood Dale*, 611 N.E.2d at 616.

A party may seek to vacate a judicial order approving an annexation pursuant to 735

ILCS 5/2-1401, governing relief from final judgments and orders:

Relief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section. Writs of error coram nobis and coram vobis, bills of review and bills in the nature of bills of review are abolished. All relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered. Except as provided in Section 6 of the Illinois Parentage Act of 1984, there shall be no distinction between actions and other proceedings, statutory or otherwise, as to availability of relief, grounds for relief or the relief obtainable.

735 ILCS 5/2-1401(a) (footnote omitted). *See also Petition of Vill. of Kildeer to Annex Certain*

*Territory*, 530 N.E.2d 491, 495-96 (Ill. 1988) (holding that a petition pursuant to Section 2-1401 of

the Illinois Code of Civil Procedure is a proper means of challenging a judicial order approving an

annexation ordinance). Additionally, completed annexation decisions are subject to challenge

through the vehicle of a petition for a writ of quo warranto. *See People v. Village of Lake Bluff*, 795

N.E.2d 281, 284 (Ill. 2003) (noting that quo warranto is an appropriate remedy to challenge

annexation decisions where a municipal corporation has acted beyond its jurisdiction); *Edgewood Park No. 2 Homeowners Ass'n v. Countryside Sanitary Dist.*, 246 N.E.2d 294, 297 (Ill. 1969) ("[T]he proper remedy for questioning an annexation which has been accomplished is Quo warranto."); *People v. Village of Ford Heights*, 633 N.E.2d 848, 850 (Ill. App. Ct. 1994) (holding that "*quo warranto* is the proper action to challenge annexation of territory by a municipal corporation," but "it is not the proper action to challenge findings made in an earlier action after a hearing on a petition for annexation."); *East Side Fire Prot. Dist. v. City of Belleville*, 582 N.E.2d 755, 756 (Ill. App. Ct. 1991) (quo warranto is the only proper remedy for questioning the validity of an annexation that has been accomplished, and a declaratory judgment action is not a concurrent remedy); *Schallau v. City of Northlake*, 403 N.E.2d 266, 271 (Ill. App. Ct. 1979) (same); *North Maine Fire Prot. Dist. v. Village of Niles*, 368 N.E.2d 516, 520 (Ill. App. Ct. 1977) (the question of whether parcels have been legally annexed can only be tried by quo warranto proceedings and cannot be raised collaterally); *People v. Village of Germantown Hills*, 367 N.E.2d 426, 427-28 (Ill. App. Ct. 1977) (the only proper method by which a non-resident of a municipality may challenge annexation is quo warranto); *People v. City of Highland Park*, 342 N.E.2d 196, 199 (Ill. App. Ct. 1976) ("[T]he exclusive method of attacking the validity of an annexation is by quo warranto proceedings."); *People v. City of Park Ridge*, 230 N.E.2d 289, 293 (Ill. App. Ct. 1967) (in a quo warranto action challenging the validity of an annexation ordinance, the plaintiffs' failure to abstract the portions of the record raising the issue of the effective date of the ordinance barred appellate consideration of the effective date); *People v. City of Peoria*, 225 N.E.2d 48, 51 (Ill. App. Ct. 1967) ("It is settled law . . . that quo warranto is an appropriate remedy to effect a direct attack upon the validity of municipal annexation proceedings.").

With respect to zoning matters, the Illinois Municipal Code authorizes the creation of zoning boards of appeals by municipalities. *See* 65 ILCS 5/11-13-3. Among the responsibilities of such boards is to "hear and decide appeals from and review any order, requirement, decision, or determination made by an administrative official charged with the enforcement of any ordinance adopted under this Division 13." 65 ILCS 5/11-13-3(f). Illinois law sets out the manner of appealing to a local board of zoning appeals from an adverse zoning decision as follows:

> An appeal to the board of appeals may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality. The appeal shall be taken within 45 days of the action complained of by filing, with the officer from whom the appeal is taken and with the board of appeals a notice of appeal, specifying the grounds thereof. The officer from whom the appeal is taken shall forthwith transmit to the board all the papers constituting the record upon which the action appealed from was taken.
>
> An appeal stays all proceedings in furtherance of the action appealed from, unless the officer from whom the appeal is taken certifies to the board of appeals, after the notice of appeal has been filed with him, that by reason of facts stated in the certificate a stay would, in his opinion, cause imminent peril to life or property. In this event the proceedings shall not be stayed otherwise than by a restraining order which may be granted by the board of appeals or by a circuit court on application and on notice to the officer from whom the appeal is taken, and on due cause shown.
>
> The board of appeals shall fix a reasonable time for the hearing of the appeal and give due notice thereof to the parties and decide the appeal within a reasonable time. Upon the hearing, any party may appear in person or by agent or by attorney. The board of appeals may reverse or affirm, wholly or partly, or may modify the order, requirement, decision, or determination as in its opinion ought to be made in the premises and to that end has all the powers of the officer from whom the appeal is taken.

65 ILCS 5/11-13-12. *See also Deynzer v. City of Evanston*, 149 N.E. 790, 793 (Ill. 1925) ("If [a landowner] feels that she has been aggrieved by the classifications of [a] zoning ordinance her recourse is to the board of appeals."); *Cann v. City of Chicago*, 241 Ill. App. 21, 1926 WL 3842, at *3 (Ill. App. Ct. 1926) (injunctive relief will not lie as a remedy for one aggrieved by a zoning decision, as the correct remedy is by appeal to the board of appeals ). As required under

Section 11-13-12 of the Illinois Municipal Code, Marion's zoning laws provide an appeals process through the Zoning Board of Appeals of Marion. *See* Marion, Ill., Zoning Ordinance 1148 art. XVI, § 1, 8.

Illinois law further authorizes judicial review of decisions of boards of zoning appeals pursuant to the provisions of the Illinois Administrative Review Law: "All final administrative decisions of the board of appeals under this Division 13 shall be subject to judicial review pursuant to the provisions of the Administrative Review Law, and all amendments and modifications thereof, . . . and the rules adopted pursuant thereto." 65 ILCS 5/11-13-13. *See also C.L.U.B. v. City of Chicago*, 157 F. Supp. 2d 903, 912-13 (N.D. Ill. 2001) (holding that the procedural due process rights of certain churches aggrieved by a decision of a city zoning board of appeals denying their challenge to an ordinance restricting their operations in commercial, business, and manufacturing areas were satisfied by the provision in 65 ILCS 5/11-13-13 allowing for review of decisions of boards of zoning appeals in state courts). Finally, Illinois law permits de novo judicial review of any rezoning or amendment to zoning ordinances by a municipality:

> Any special use, variance, rezoning, or other amendment to a zoning ordinance adopted by the corporate authorities of any municipality, home rule or non-home rule, shall be subject to de novo judicial review as a legislative decision, regardless of whether the process of its adoption is considered administrative for other purposes. Any action seeking the judicial review of such a decision shall be commenced not later than 90 days after the date of the decision.

* * * *

> The principles of substantive and procedural due process apply at all stages of the decision-making and review of all zoning decisions.

65 ILCS 5/11-13-25(a), (b). *See also Chicago Title Land Trust Co. v. Board of Trs. of Vill. of*

*Barrington*, Nos. 1-06-1000, 1-06-2442, 2007 WL 2769250, at *7 (Ill. App. Ct. Sept. 24, 2007). In this case, it is undisputed that Plaintiffs have never pursued any of the state-law remedies outlined above before bringing this action.

Plaintiffs contend that they are not required to pursue state-law remedies in this instance because doing so would be futile. Specifically, Plaintiffs' complaint asserts in a conclusory manner that they are not required to pursue state remedies because "to do so would be futile or patently useless given Defendant Marion's evident disregard for public considerations." Complaint ¶ 68, ¶ 79. Additionally, at the hearing on the pending motions to dismiss, Plaintiffs also raised the argument that pursuit of state remedies would be futile because they lack standing to pursue such remedies under the Illinois Municipal Code and because Marion failed to furnish them adequate notice of the proceedings to annex and rezone Karco's property, precluding them from pursuing such remedies. It is true that *Williamson County* does not require recourse to state remedies before filing suit in federal court where such remedies are "unavailable or inadequate." 473 U.S. at 197. *See also Daniels v. Area Plan Comm'n of Allen County*, 306 F.3d 445, 456 (7th Cir. 2002) (noting "a limited exception" to *Williamson County* "based on the futility of seeking state court relief"). However, the Court concludes that Plaintiffs have failed to establish futility such as to excuse them from the requirements of *Williamson County*.

With respect to challenging annexation, as discussed the Illinois Municipal Code authorizes "any interested person" to file objections to annexation. 65 ILCS 5/7-1-3. The statute "contemplates the filing of objections to [a] petition or ordinance [for annexation] for any matter going to the validity thereof by any interested person," regardless of whether the objector's property is itself sought to be annexed. *Touchette*, 150 N.E.2d at 181. Thus, in *Touchette* the Supreme Court

of Illinois found that a party had standing to object to annexation of certain property by the City of East St. Louis, Illinois, where it was shown that the party resided in territory proposed to be incorporated as the City of Centreville, Illinois, and that the proposed annexation by East St. Louis would destroy the contiguity of Centreville. *See id*. at 181-82. Similarly, ownership of property is not an essential predicate to a quo warranto action, provided the petitioner can demonstrate a special interest sufficient to support standing to pursue relief. *See People v. City of N. Chicago*, 510 N.E.2d 577, 586 (Ill. App. Ct. 1987) (holding that the plaintiffs in a quo warranto action had a sufficient private interest to have standing to challenge the defendant city's annexation of strip of land, notwithstanding their lack of ownership of the land; the plaintiffs' allegations established they had much more than the mere status of a nearby resident, and the damage was occurring at the time the petition for leave to file a complaint in quo warranto was brought); *People v. Village of Burr Ridge*, 225 N.E.2d 39, 41 (Ill. App. Ct. 1967) (holding that the petitioner in a quo warranto action could challenge both the annexation of its own property and the annexation of a portion of road on adjoining land as well, where the issue of the legality of the petitioner's land was inextricably intertwined with the legality of the annexation of the adjoining land).

With respect to challenges to zoning, as discussed, an appeal to a zoning board of appeals may be taken by any "person" who is "aggrieved" by a zoning decision. 65 ILCS 5/11-13-12. In general, a neighboring property owner who can present evidence showing that he or she will sustain special damage different from damage sustained by the public generally, because of an existing land use control device, such as a zoning ordinance, is deemed to have standing to question the validity of the land use control. *See Treadway v. City of Rockford*, 192 N.E.2d 351, 355 (Ill. 1963) (in a suit for a judgment declaring unconstitutional a city ordinance rezoning property from a residential to

business classification and enjoining the defendants from constructing a shopping center, stating that "the plaintiffs have the burden of proving that they have suffered a special damage by reason of such uses which differs from that suffered by the general public."). *See also East Maine Township Cmty. Ass'n v. Pioneer Trust & Sav. Bank*, 145 N.E.2d 777, 782 (Ill. App. Ct. 1957) (a neighboring landowner may be permitted to intervene to defend a zoning ordinance that is being challenged upon a showing of some special damage). This rule applies even as to a nonresident seeking to challenge validity of a land use control ordinance, so long as the nonresident can show that he or she suffers special damage by reason of the change in the use of land different from that suffered by the general public. *See Whittingham v. Village of Woodridge*, 249 N.E.2d 332, 332-33 (Ill. App. Ct. 1969) (holding that owners of land outside a village but adjacent to a tract which, while presently zoned residential by the county, was the subject of an agreement for annexation to the village and a consequent change of zoning, had standing to contest the validity of the county's amendment of the zoning of the subject property upon a showing of special damage different from that suffered by general public).

In this case, Plaintiffs allege that they live adjacent to Karco's property and that the operation of an auto-shredding plant on Karco's property will drive down the value of their property. Accordingly, they clearly are aggrieved parties within the meaning of 65 ILCS 5/11-13-12. *See Treadway*, 192 N.E.2d at 353-55 (holding that special damage was demonstrated by averments that construction of a proposed shopping center pursuant to a reclassification of property from residential to commercial for zoning purposes would decrease the value of the plaintiff's adjoining property by reason of an increase in vehicular traffic congestion and the noise, lights, confusion, debris, trash, and odors attendant upon the maintenance and

operation of the proposed shopping center); *Novosad v. Mitchell*, 621 N.E.2d 960, 963-64 (Ill. App. Ct. 1993) (in an action for administrative review of a final order of a county superintendent granting a petition for the laying out of a new road, holding that the plaintiffs had standing to petition as they were all legal voters residing within two miles of the land involved and would be adversely affected by the new road, and the plaintiffs had appeared at public hearings, introduced evidence, and raised objections to the road); *Whittingham*, 249 N.E.2d at 333 (holding that the plaintiffs had standing to challenge a proposed rezoning of property from residential to commercial use where the plaintiffs' property was immediately adjacent to the property as to which rezoning was sought and the plaintiffs averred that they would suffer depreciation of their property values if the proposed rezoning were allowed).

As to Plaintiffs' argument that they could not pursue state-law remedies because they lacked adequate notice of the proceedings to annex and rezone Karco's property, the Court finds this argument unpersuasive. Assuming that Plaintiffs lacked adequate notice of the proceedings at issue, this would not have precluded them from seeking relief under state law. For example, in *Village of Kildeer* the Illinois Supreme Court found that property owners were entitled to seek relief pursuant to 735 ILCS 5/2-1401 from a judicial order approving an annexation where the landowners did not receive adequate notice of the annexation, notwithstanding the technical compliance of municipal authorities with statutory notice requirements governing annexation proceedings. The court said, "The facts in the instant case indicate that Kildeer proceeded in a manner that was calculated to prevent objectors from discovering the legal notices. Kildeer's entire course of conduct, in addition to the publication of the notices, vitiated the effectiveness of the notice as to the affected property owners." 530 N.E.2d at 498. Similarly, in *Doyle v. City of Crystal*

*Lake*, 539 N.E.2d 796 (Ill. App. Ct. 1989), the court found that a petition by residents and taxpayers seeking administrative review of a city zoning board's decision was timely because brought within forty-five days of the date the petitioners first reasonably could have known of the board's decision. The court said, "[w]e fail to see how an internal action of the municipality in this case, unknown to any potentially interested parties, should trigger the running of the 45-day appeal period. It is clear that a person cannot be aggrieved until he has some actual or constructive knowledge of the action complained of or suffers some injury in fact." *Id*. at 799. Relying upon *Bull v. American National Bank & Trust Co. of Chicago*, 250 N.E.2d 839 (Ill. App. Ct. 1969), the *Doyle* court concluded that a delay in seeking review cannot be invoked as a defense against "an aggrieved party whose predicament was caused by defendant's use of an irregular procedure." 539 N.E.2d at 799. Likewise, in this case, assuming that, as Plaintiffs contend, they did not receive proper notice of Marion's decisions regarding annexation and zoning giving rise to this case, such irregular procedures would not have prevented Plaintiffs from pursuing a timely appeal from the decisions.

Having concluded that state-law remedies were available to Plaintiffs, the Court acknowledges that the mere availability of such remedies is not, by the same token, a guarantee that those remedies can afford Plaintiffs the relief they seek. However, for purposes of the special restrictions on ripeness established by *Williamson County*, "[s]tate remedies do not become unavailable . . . just because resort to them may fail." *SGB Fin. Servs., Inc. v. Consolidated City of Indianapolis-Marion County, Ind*., 235 F.3d 1036, 1038 (7th Cir. 2000). As the Seventh Circuit Court of Appeals has emphasized, plaintiffs cannot declare state remedies "futile *ex ante*, without ever being tried: what would be the point of asking [federal] judges to be seers? . . . . No one can

*know* whether administrative requests will be futile; the only way to find out is to try." *Id.* (quoting *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999)) (emphasis in original). "The right question" for purposes of determining whether a plaintiff must exhaust state remedies before bring suit in federal court is "whether the state courts are available to receive arguments and resolve disputes; that the federal plaintiff likely would lose on the merits is neither here nor there." *Id.* at 1039. *See also Rockstead v. City of Crystal Lake*, 486 F.3d 963, 966 (7th Cir. 2007) (quoting *SGB Fin. Servs., Inc.*, 235 F.3d at 1038) (holding that a constitutional challenge to state zoning regulations was unripe, where the plaintiff had never pursued state-law remedies and merely averred that such remedies were futile: "[I]nstead of asking a federal judge to guess what a state court is likely to do, why not ask the state court?"); *Unity Ventures v. Lake County*, 841 F.2d 770, 776 (7th Cir. 1988) ("Although [the landowner] testified that he believed applications to the County and other entities would be 'useless,' the law requires a greater legitimate effort to follow administrative procedures than plaintiffs have made.").[2]

Finally, as Marion and Karco point out, it is quite likely that the time limits applicable to Plaintiffs' state remedies in this case have run out, most notably the one-year statute of limitation furnished under Illinois law for actions directly or indirectly contesting annexations:

> Neither the People of the State of Illinois nor any person, firm or corporation, public or private, nor any association of persons shall commence an action contesting either

---

2. To the extent Plaintiffs' complaint seems to suggest that they might have encountered unfair bias at the hands of Marion zoning authorities had they pursued state-law remedies, the Court notes that, whatever views Marion's city council may have with respect to the controversy underlying this case, Marion's board of zoning appeals is a separate entity and is under a duty to be impartial. *See Speck v. Zoning Bd. of Appeals of City of Chicago*, 433 N.E.2d 685, 687 (Ill. 1982); *Wallman v. Zoning Bd. of Appeals, City of Fairview Heights*, 537 N.E.2d 422, 423 (Ill. App. Ct. 1989). In any event, as discussed, the mere fact that state-law remedies are likely to be inefficacious does not excuse a litigant from pursuing such remedies under *Williamson County*.

directly or indirectly the annexation of any territory to a municipality unless initiated within one year after the date such annexation becomes final or within one year of the effective date of this amendatory Act of 1965 whichever date occurs latest. This amendatory Act of 1965 shall apply to annexations made prior to the effective date of the Act as well as those made on or after the effective date. Where a limitation of a shorter period is prescribed by statute such shorter limitation applies. The limitation set forth in this section shall apply to any annexation, even where the judge, body or officer annexing the territory did not at the time of such annexation have jurisdiction of the subject matter, and irrespective of whether such annexation may otherwise be defective or void, except that the limitation of this Section shall not apply to annexations of territory which was not contiguous at the time of annexation and is not contiguous at the time an action is brought to contest such annexation.

65 ILCS 5/7-1-46. However, this is not the kind of circumstance under which the Seventh Circuit Court of Appeals deems state remedies to be unavailable. "[A] claimant cannot be permitted to let the time for seeking a state remedy pass without doing anything to obtain it and then proceed in federal court on the basis that no state remedies are open. As recognized in other areas where exhaustion of remedies is required, an unexcused failure to exhaust forfeits the plaintiff's rights, with various exceptions not applicable here." *Gamble*, 5 F.3d at 286. As the Seventh Circuit Court of Appeals stated in *River Park* in dismissing as unripe the claims of litigants who failed to pursue state remedies,

Federal courts are not boards of zoning appeals. This message, oft-repeated, has not penetrated the consciousness of property owners who believe that federal judges are more hospitable to their claims than are state judges. Why they should believe this we haven't a clue; none has ever prevailed in this circuit, but state courts often afford relief on facts that do not support a federal claim. Is it that they have omitted the steps necessary to obtain review in state court and hope for the best in a second-chance forum? Well, we are not cooperating. Litigants who neglect or disdain their state remedies are out of court, period.

23 F.3d at 165.

Simply put, "Federal litigation is not a *repêchage* round for losers of earlier contests, or for those who overslept and missed the starters' gun." *Covington Court, Ltd.*, 77 F.3d at 179 (quoting

*River Park*, 23 F.3d at 167) (dismissing as unripe a residential developer's action against a city and a property owner for an alleged unconstitutional taking of the developer's property and conspiracy to violate its substantive due process rights where the developer failed to exhaust state remedies by seeking a writ of mandamus or a common-law writ of certiorari to compel a vote on a development plan within ninety days of the developer's submission of the plan to the city's board of trustees). *See also Standard Bank & Trust Co. v. Village of Orland Hills*, 891 F. Supp. 446, 452 (N.D. Ill. 1995) (dismissing constitutional due process claims arising from local land regulation: "Instead of asking for relief from the state courts, [plaintiffs] went along with the political process until it was too late," but "the correct remedies in a zoning dispute exist in the state courts."). The Court concludes that Plaintiffs have failed to pursue state remedies with respect to their constitutional due process claims, and therefore under *Williamson County* those claims must be dismissed as unripe.[3]

## B.      Exercise of Supplemental Jurisdiction

Having concluded that the constitutional due process claims in this case must be dismissed, the Court turns to the question of whether it should exercise supplemental jurisdiction over the remaining claims in this case, which arise under Illinois law. As noted, the basis for the Court's subject matter jurisdiction in this case is 28 U.S.C. § 1331, which grants federal district courts original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United

---

3.      Having concluded that the constitutional due process claims in this case must be dismissed as unripe, the Court does not reach the issue of whether *Pullman* abstention or *Burford* abstention is proper in this case, or whether Karco is a proper party Defendant to the constitutional claims. The Court likewise expresses no opinion as to the merits of Plaintiffs' constitutional claims, given that, as discussed, any such opinion would be merely advisory. *See Hinrichs*, 975 F.2d at 1333. *See also Forseth*, 199 F.3d at 368 ("[W]e have subject matter jurisdiction over only those cases that are . . . ripe for adjudication.").

States." 28 U.S.C. § 1331. This jurisdiction stems from Count I and Count II of the complaint, which, as noted, are asserted under 42 U.S.C. § 1983. The Court's jurisdiction over Counts III-VII of the complaint lies in its supplemental jurisdiction, which is codified in 28 U.S.C. § 1367(a), whereby the jurisdiction of a federal district court is extended to all claims that are so related to a claim within the court's original jurisdiction that they form part of the same case or controversy within the meaning of Article III of the Constitution. *See City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997) (citing 28 U.S.C. § 1367).[4]

Although 28 U.S.C. § 1367(a) authorizes federal courts to exercise supplemental jurisdiction over state-law claims, this does not mean that federal courts must exercise jurisdiction in all cases. *See International Coll. of Surgeons*, 522 U.S. at 172. Rather, supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right[.]" *Id*. District courts can decline to exercise jurisdiction over supplemental state law claims for a number of valid reasons and should "deal with cases involving [supplemental] claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the [supplemental] jurisdiction doctrine." *Id*. at 172-73. While there are "unusual cases in which the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness and comity – will point to federal decision of the state-law claims on the merits," the district judge is given broad power in determining whether such circumstances apply and, thus, whether it is appropriate to retain jurisdiction over the state-law claims. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727-28 (7th Cir. 1998). Furthermore, "[s]o long as an arguable balance of the above mentioned

---

4. The supplemental jurisdiction statute combines the doctrines of pendent and ancillary jurisdiction under the common heading of "supplemental jurisdiction." *See International Coll. of Surgeons*, 522 U.S. at 164-65 (construing 28 U.S.C. § 1367).

factors points in the direction of the district court's discretionary determination whether or not to exercise jurisdiction, that decision, being discretionary, will not be disturbed." *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994). In fact, the district court's discretion to relinquish supplemental jurisdiction is "almost unreviewable," especially when all federal claims have been dropped from a case before trial and only state-law claims remain. *Kennedy*, 140 F.3d at 728 (quoting *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989)). *See also Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) (quoting *Disher v. Information Res., Inc.*, 873 F.2d 136, 140 (7th Cir. 1989)) ("A decision to relinquish [supplemental] jurisdiction" once all of the federal claims in a case have been dismissed before trial "is . . . the norm, . . . and such a decision will be reversed only in extraordinary circumstances."). "At that point, respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns." *Kennedy*, 140 F.3d at 728. *See also United States v. Zima*, 766 F.2d 1153, 1158 (7th Cir. 1985) (noting that, in cases involving complex or novel issues of state law, it may be an abuse of discretion for a court to retain jurisdiction after the federal issue is disposed of at trial or even on appeal).

Among the situations enumerated in 28 U.S.C. § 1367 in which it is appropriate for a court to decline to exercise supplemental jurisdiction is that in which the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). *See also Kennedy*, 140 F.3d at 727. In fact, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). *See also Futch v. AIG, Inc.*, Civil No. 07-402-GPM, 2007 WL 1752200, at *5 (S.D. Ill. June 15, 2007) (quoting *Carr v.*

*CIGNA Sec., Inc.*, 95 F.3d 544, 546 (7th Cir. 1996)) ("The general rule, when the federal claims fall out before trial, is that the judge should relinquish jurisdiction over any supplemental . . . state law claims in order to minimize federal judicial intrusion into matters purely of state law."). Because the Court has determined that it must dismiss all of the claims in this case over which it has original jurisdiction, it therefore is within the Court's discretion to proceed with the pendent state-law claims remaining in this case or to decline to exercise supplemental jurisdiction over them, a determination that the Court must make by balancing the factors of judicial economy, convenience, fairness, and comity. *See International Coll. of Surgeons*, 522 U.S. at 172-73.

Turning first to the factor of judicial economy, the Court finds that this factor does not weigh in favor of retention of jurisdiction. This case has been pending in this Court slightly more than five months. Discovery in the case obviously is not at an advanced stage, nor has the Court acquired substantial familiarity with the facts of the case. Apart from briefing as to Defendants' motions to dismiss, which were directed largely to the viability of Plaintiffs' federal claims, not their state-law claims, virtually no judicial resources have been committed to the state-law claims in this case. Accordingly, at this point, the burden of the state-law claims would be the same for a federal as for a state court, so that there would be no substantial duplication of effort if the state-law claims were tried in state court. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (holding that the district court should have relinquished jurisdiction over a state-law claim when the federal claims were dismissed and there was very little federal judicial investment in the state-law claims). *See also D'Oliviera v. Rare Hospitality Int'l, Inc.*, 150 F. Supp. 2d 346, 356 (D.R.I. 2001) (noting that it is inconsistent with the policy favoring conservation of federal judicial resources for federal courts to try cases that present no question of federal law). *Cf. Newport Ltd. v. Sears, Roebuck &*

*Co.*, 941 F.2d 302, 307-08 (5th Cir. 1991) (a refusal to exercise supplemental jurisdiction was an abuse of discretion where the case was on the eve of trial after four years of litigation that had produced twenty-three volumes and thousands of pages of record, a pretrial order exceeding 200 pages, over a hundred depositions, and, according to counsel, nearly 200,000 pages of discovery production).

With respect to convenience, generally this factor weighs in favor of the exercise of supplemental jurisdiction only when, under the so-called "no brainer" exception to the general rule that a court should decline to exercise jurisdiction over pendent state-law claims after all federal claims furnishing original jurisdiction over a case have been dismissed before trial, the pendent claims are patently frivolous and it is clear how they must be decided. *See Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997). In such cases, "[i]f . . . an interpretation of state law that knocks out the plaintiff's state claim is obviously correct, the federal judge should put the plaintiff out of his misery then and there, rather than burdening the state courts with a frivolous case." *Id. See also Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (citing *Wright*, 29 F.3d at 1251-52) (noting an exception to the general rule favoring refusal of supplemental jurisdiction over pendent state-law claims after dismissal of all federal claims in a case "where it is obvious how the [state-law] claims should be decided."); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993) (holding that retention of a state-law claim is appropriate when the correct disposition of the claim is "so clear as a matter of state law that it [can] be determined without further trial proceedings and without entanglement with any difficult issues of state law[.]"); *Wentzka v. Gellman*, 991 F.2d 423, 425 (7th Cir. 1993) (holding that retention of supplemental jurisdiction over state-law claims was improper where the relevant state law was

unsettled). In this case Plaintiffs' state-law claims do not appear to be patently frivolous, nor is it absolutely clear to the Court how those claims should be decided; indeed, it is arguable that the pendent state-law claims in this case involve novel issues of state law. Accordingly, the factor of convenience does not favor retention of supplemental jurisdiction by the Court.

Finally, fairness and comity are not served by this Court's retention of jurisdiction. As the Supreme Court of the United States has instructed, "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law" in state court. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). *See also Rouse v. Farmers State Bank of Jewell, Iowa*, 866 F. Supp. 1191, 1220 (N.D. Iowa 1994) (declining to exercise supplemental jurisdiction over a state-law claim after dismissal of the federal claim furnishing original jurisdiction: "[T]he state law claim that remains, although not particularly unusual or complex, does require the application of case law that has grown up around a specific state statute . . . . This federal court does not believe that it is appropriate or necessary for the federal court to adjudicate matters that are plainly within the purview and expertise of the state court where there is no independent federal jurisdiction."). Federalism dictates that "a state's own courts should be allowed to decide issues of state law arising in suits between citizens of that state." *Milwaukee Prof'l Fire Fighters Ass'n, Local 215, IAFF, AFL-CIO v. City of Milwaukee*, 869 F. Supp. 633, 650 (E.D. Wis. 1994) (quoting *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1346 (7th Cir. 1986)). Correspondingly, state courts are far better suited than federal courts to decide cases that present only questions of state law. *See Peterson v. H & R Block Tax Servs., Inc.*, 22 F. Supp. 2d 795, 806 (N.D. Ill. 1998) (although the exercise of supplementary jurisdiction is discretionary, state courts are better situated

to hear remaining state-law claims after the dismissal of related federal claims). *Cf. Sibley v. Lemaire*, 184 F.3d 481, 490 (5th Cir. 1999) (the district court did not abuse its discretion when it declined to conduct a lengthy trial on state-law negligence claims in federal court after claims under 42 U.S.C. § 1983 were dismissed by summary judgment). In sum, there is no evidence that judicial economy, convenience, fairness, and comity compel this Court to retain jurisdiction over the pendent state-law claims in this case. Rather, those claims belong in state court. Therefore, the Court exercises its discretion in favor of declining to exercise supplemental jurisdiction over Counts III-VII of the complaint. Those claims will be dismissed without prejudice.

### III. CONCLUSION

Count I and Count II of the complaint in this cause are **DISMISSED without prejudice** for lack of subject matter jurisdiction. The Court declines to exercise supplemental jurisdiction over Counts III-VII of the complaint, and those claims are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

DATED: 12/26/07

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge